## PITTSBURGH & LAKE ERIE RD CO v DZEMA

Ohio Appeals, 7th Dist, Mahoning Co

Decided March 14, 1933

Wilson, Hahn & Wilson, Cleveland, for plaintiff in error.

Harry F. Payer, Cleveland, for defendant in error.

FARR, J.

The first assignment for error is to the admission of incompetent testimony at the bottom of page 146 and on 147 of the record. The question is, "Now, Mr. Hill, give us your opinion, if you will, as to what, if any, relation the broken king pin had to the ultimate result?" Answer, "If there had been a king pin in the place designed and constructed by the car builders, it would hold and the accident never could have happened." This relates to a vital issue in this case; because it is claimed that this broken king pin was the cause of the overturning of the car. This witness was Elwin Hill, who was asked as an expert to answer the above question. Mr. Hill suffered somewhat at the hands of the cross-examiner to the effect that he had had but a limited experience in railroad matters, although it was disclosed that at one time he invented some sort of lamp to be used in a mail car. It is sufficient to say that Mr. Hill did not disclose as broad a knowledge of railroading and engineering matters about which he assumed to testify as might be expected, but which probably went more to the weight than the competency of the evidence. Probably the greatest objection is that the matters upon which the hypothetical question is based are not sufficiently proved by the record, especially as to the effect of the broken king pin.

There is another reason perhaps why he should not have answered, and that is that he was determining the ultimate question, the question to be determined by the jury. It is in **Torpedo Company v Fishburn et, 61 Oh St, 608,** and in **Hayes v Smith, 62 Oh St, 185,** that this question is treated at some length by the Supreme Court of Ohio, and in both of which cases it is specifically held that a witness may not determine the ultimate question for the jury, so that the conclusion is reached that for the foregoing reasons this testimony was incompetent in the form in which it went to the jury and should have been excluded by the trial court. Many cases are cited by plaintiff in error to sustain this view.

The next, and a very important question, in this case, is whether or not this judgment is against the weight of the evidence. As before stated, the trip from Rankin, Pa., to Cleveland, Ohio, was made safely by this train, a train of which these two cars were a part. They reached the yard of the McKinney Company and were at rest with their burden of steel. It was desired, as before stated, to move them a short distance. This attempt failed with the equipment at hand, the steam crane, by Mike Betz and some other witnesses who testify these two cars at the time of the slipping of the trusses, from whatsoever reason it may have been, were at complete rest. True, Mr. Hill indicates that in his opinion the movement of the flat car in some way transmitted the power of or from that movement to the gondola car, and he says that these two plates that fit into each other and are held in place by this king or center pin, and he believes that the male plate by reason of some transmitted force or power, crept up the side of the female plate until sufficient height had been reached that it permitted the load to swing sidewise and off, to the injury of this unfortunate man, but the record discloses that this shipment of steel weighed fifty thousand pounds. There were six of these tremendous things upon this gondola car. Prior to this time Dzema and his companion had been on top. They had been taking the nuts from the bolts and removing them. This record is not entirely clear as to how many of these ties had been removed, save and except one witness says they were taken "one by one." This statement must receive credit, for the reason that when the trusses started to move they all went. It seems as though there could not have been much to hold them and that they simply went over the side of the car. That would at least suggest to the thoughtful observer that perhaps all of these binders had been removed. There is another reason why that was the case. When these cars could not be removed from their position of rest, they then said, "Well, we will unload them where they are," and they began the work of preparing to unload these trusses, and must have intended or had removed all of the binders.

In this connection reference is made to

a question and answer of Mr. Hill:

"Q. Did you consider that this attempt to move it (that is, the flat car) as given to you may have caused the body with this fifty thousand pounds loaded on it to bob up in the air three or four inches?"

And that would have been necessary, because the broken king pin after the car had overturned was still protruding from its socket a distance of two or three or four inches. The answer was:

"A. I do."

Incredible as it may seem, and as utterly impossible under the circumstances, because the flat car was of wood and would be sufficiently flexible that when a far corner was raised, the part next to the gondola would remain stationary, and especially since it is said that at the most it was raised seven inches and then settled back on the truck. Can it be possible that such slight movement caused the gondola to move, to sway, to raise a proportionate part of that fifty thousand pounds until it passed the broken king pin which was protruding by some inches and permit the car to overturn? Scarcely so. There is much of the testimony which is interesting. The briefs are exhaustive, reciting testimony of both plaintiff in error and defendant in error, and they have been found quite helpful. It should be remembered that this was a standard load; loaded, so it is suggested, in an approved manner, which no doubt means an attempt to establish a proper equilibrium, and this car had contrivances known as "side bearings" upon the side that were supposed to establish an equilibrium for the car. Just how these girders or trusses started from their position perhaps will not be known, but it is to be said in this connection that it certainly was not because of the broken king pin, for the reason that this shipment of steel had started from its home at Rankin, Pa., and in a freight train had been conveyed to the yard of the McKinney Steel Company, around curves, with the jostling of the train this broken king pin would surely have caused trouble rather than when these cars were absolutely at rest. If, indeed, this expert testimony be true, then almost a miracle was performed on this journey. Unthinkable, and the theory of this testimony is surely impossible concerning this car, with its load and broken king pin, including the claim that when at absolute rest it was possible for this car to turn over, speaking from a personal view point it does seem

that such proposition is one of the unanswerable things in this law suit; that if the broken pin was to cause trouble it would have happened long before it did. True, this was not a new break in the pin. It was said to be an old break. It had been used for some time this way without any upset. There is no question but what the pin was broken, but enough remained in the socket to keep these plates embedded in each other in their proper position and they were never intended to prevent the overturning of those cars. The key at the top of this pin determined the distance which it went down through the two plates.

In the light of this testimony it would seem unnecessary to further discuss this question of the judgment being against the weight of the evidence. It is a fine but difficult theory that Mr. Hill discusses upon the witness stand, but it seems wholly impracticable in this case, at least to the mind of a layman, and impossible of having been carried out in this instance. Unhappy as this accident is in its consequences, the burden of that unhappiness should not be placed without just cause upon the shoulders of the plaintiff in error, and without further discussion it follows that the judgment must be reversed, for the admission of incompetent testimony and because the judgment is against the weight of the evidence. Therefore, this cause is remanded to the Court of Common Pleas of this county.

POLLOCK and ROBERTS, JJ, concur in the judgment.